UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ITALIAN EXHIBITION GROUP USA, INC.,

                Plaintiff,

 -against-

FABRIZIO BARTOLOZZI, et al.,

                Defendants.

23-cv-4417 (AS)

MEMORANDUM OPINION
AND ORDER

ARUN SUBRAMANIAN, United States District Judge.

## BACKGROUND

Defendant Fabrizio Bartolozzi sold a majority interest in his company, FB International, to Plaintiff Italian Exhibition Group (IEG). Second Am. Compl. ¶ 1, Dkt. 80. The deal had several parts, including a stock-purchase agreement (SPA) and two employment agreements. ¶¶ 1, 84. The employment agreements kept Bartolozzi on as president and kept on his spouse, Defendant Susan Paik, as general manager. ¶ 84. IEG alleges that after the sale was executed, Bartolozzi and Paik ran the business into the ground. ¶ 8. So it sued, bringing five claims against Bartolozzi and three against Paik. The three claims against her are breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and tortious interference with contract. ¶¶ 266–279, 288–293. This opinion addresses only Paik's motion to dismiss for lack of personal jurisdiction.

This Court previously granted Paik's motion to dismiss the complaint for lack of personal jurisdiction. Dkt. 75. But it also gave IEG the opportunity to amend its complaint, which it did. Dkt. 80. IEG now pleads that "Paik was personally and directly involved in the negotiations that led to the SPA and associated agreements." *Id.* ¶ 43. As part of those negotiations, "Paik took part in person in meetings that occurred in New York City with representatives of IEG concerning the potential transaction," and Paik provided "information regarding the scheduling of multiple meetings in New York to discuss the potential transaction." ¶ 66. "Following [those] meeting[s], Ms. Paik directly corresponded with [IEG's New York–based representative] on behalf of herself and Mr. Bartolozzi to provide information regarding the Company in order to induce IEG to acquire a majority interest in the Company." ¶ 67; *see* Dkt. 47-1 § 8.08.

Paik has renewed her motion to dismiss for lack of personal jurisdiction. Dkt. 88. For the reasons below, that motion is DENIED.

## LEGAL STANDARDS

To survive a motion to dismiss, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to

dismiss, the Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016).

"When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) (Sotomayor, J.). Before discovery, as here, the plaintiff "may defeat the [12(b)(2)] motion by pleading in good faith legally sufficient allegations of jurisdiction, i.e., by making a *prima facie* showing of jurisdiction." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (cleaned up).

## DISCUSSION

IEG claims two grounds for personal jurisdiction. It says Paik (1) is "closely related" to the SPA forum-selection clause and (2) "transacted business" in New York under § 302(a)(1) of New York's long-arm statute. Dkt. 80 ¶¶ 42, 46. Because the latter ground is enough to resolve the motion, the Court does not address the former.

For § 302(a)(1) to apply, Paik must have (1) "transact[ed] any business within the state," and (2) IEG's claims must "aris[e] from" those transactions. N.Y. C.P.L.R. § 302(a)(1). If the long-arm statute permits the exercise of jurisdiction, the Court then decides whether exercising jurisdiction also comports with the Due Process Clause. *See Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69, 73 (2d Cir. 2023).

*First*, Paik transacted business in the state. New York courts have routinely held that defendants are subject to personal jurisdiction when they "entered New York to negotiate and execute contracts." *Wilson v. Dantas*, 9 N.Y.S.3d 187, 194 (App. Div. 2015), *aff'd*, 80 N.E.3d 1032 (N.Y. 2017); *see also Milton R. Barrie Co. v. Levine*, 387 N.Y.S.2d 627, 628 (App. Div. 1976) (collecting earlier cases). Indeed, New York's long-arm statute "is a single-act statute requiring but one transaction." *State v. Vayu, Inc.*, 206 N.E.3d 1236, 1240 (N.Y. 2023) (citation omitted). So even "a solitary business meeting conducted for a single day in New York may supply the minimum contacts necessary to subject a nonresident participant to the jurisdiction of [New York] courts." *Id.* at 1241 (citation omitted).

Here, taking IEG's allegations as true and drawing all inferences in its favor, Paik's "meeting[s] in New York, and the follow up communications, designedly and materially forwarded the negotiation and performance of the contract for sale" of FB International. *Id.* (internal quotation marks omitted). Although the complaint is not clear on whether the agreement was ultimately executed in New York, that shortcoming "would not preclude a finding of meaningful presence in New York if there were substantial negotiations in that state leading to its execution." *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 91 (2d Cir. 1975); *see also Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 60 (2d Cir. 1985). So Paik "purposefully availed [herself] of New York law by engaging in th[ese] negotiations, being physically present in New York at the time the contract was made, and thereby establishing a continuing relationship between the parties." *Wilson*, 9 N.Y.S.3d at 194. This conclusion is shored up by Paik's "other purposeful acts … in this

State in relation to the contract, albeit preliminary or subsequent to its execution," such as doing business at the Javits Center, Dkt. 80 ¶ 46, and having sole control of the company's New York bank account, ¶ 146.

*Second*, IEG's claims arise from these negotiations. To "arise from" a transaction, "there must be an 'articulable nexus' or 'substantial relationship' between the business transaction and the claim asserted." *Licci v. Lebanese Canadian Bank*, 984 N.E.2d 893, 900 (N.Y. 2012) (citations omitted). New York's highest court has "consistently held that causation is not required, and that the inquiry under the statute is relatively permissive." *Id.* "[A]t a minimum," there must be "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." *Id.* So long as "at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute." *Id.* at 901.

In applying this "permissive" standard, "it is appropriate to view a business transaction through a broader lens when determining whether a plaintiff's claim arises from that transaction so as to confer personal jurisdiction over a defendant." *Wilson*, 9 N.Y.S.3d at 196. In one case, negotiations in New York led to a group of agreements forming an "integrated whole" that laid "the foundation for a continuing relationship between the parties." *Id.* at 194. The court held that "there was an articulable nexus between plaintiff's claim for compensation and the overall transaction that occurred in New York and the resulting investment scheme" that gave rise to the plaintiff's right to compensation. *Id.* at 195.

This case fits a similar mold. The negotiations here resulted in a group of agreements that established enduring connections between the parties: IEG acquired FB International and installed Bartolozzi as its CEO and Paik as its general manager. The claims here arise from that relationship. Thinking of the claims in terms of their elements, the first element of the fiduciary-duty claims is "the existence of a fiduciary relationship." *Village of Kiryas Joel v. County of Orange*, 43 N.Y.S.3d 51, 57 (App. Div. 2016) (internal quotation marks omitted). By selling FB International and installing Bartolozzi and Paik as executives, the agreements here have at least some "relatedness" to the existence of a fiduciary relationship. And the tortious-interference claim is even more straightforward: Paik is accused of interfering with the agreements themselves, so the negotiation of those agreements is clearly related.

Other courts have reached similar conclusions. *See Khankhanian v. Khanian*, 2017 WL 1314124, at *3 (S.D.N.Y. Apr. 6, 2017) ("Defendant's business transactions in New York, which culminated in a business agreement and fiduciary relationship with Plaintiff, are sufficiently related to Plaintiff's claims that Defendant breached his fiduciary duties and converted assets in violation of the parties' agreement."); *In re Stillwater Cap. Partners Inc. Litig.*, 851 F. Supp. 2d 556, 570–71 (S.D.N.Y. 2012) (holding that the court has personal jurisdiction over an executive for a breach-of-fiduciary duty claim arising from his negotiation in New York of an agreement on the company's behalf); *Nasso v. Seagal*, 263 F. Supp. 2d 596, 613 (E.D.N.Y. 2003) (holding that contacts related to forming a contract had "the requisite relationship to the claims for breach of

3

fiduciary duty because [the defendant's] agreements to star in the films and the steps he took in furtherance of those agreements gave rise to his fiduciary duty to carry out the agreements").

*Third*, exercising personal jurisdiction over Paik comports with due process. Due process requires that Paik has had "minimum contacts" with the forum and that exercising personal jurisdiction is "reasonable[]." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010). "In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the litigation." *Calder v. Jones*, 465 U.S. 783, 788 (1984) (internal quotation marks omitted). As for reasonableness, exercising jurisdiction must not "offend traditional notions of fair play and substantial justice." *Chloe*, 616 F.3d at 173 (citation omitted). That inquiry involves five factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.* at 164.

On minimum contacts, largely the same analysis as that under the long-arm statute applies. *See Chloe*, 616 F.3d at 171. By physically going to New York to negotiate the agreements and then continuing to negotiate with IEG's New York–based representative afterward, Paik "purposefully avail[ed] [her]self of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks omitted); *see also id.* at 479 ("[N]egotiations and contemplated future consequences … must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum."); *Sherwin-Williams Co. v. C.V.*, 2016 WL 354898, at *4 (S.D.N.Y. Jan. 28, 2016) ("The parties' meetings in New York … meet the purposeful availment standard under both New York and federal law. Although they were not dealing with a New York corporation, nor negotiating an agreement to be governed by New York law, Defendants' physical presence in the forum cannot be said to be random, fortuitous, or attenuated."); *Accurate Grading Quality Assur., Inc. v. Thorpe*, 2013 WL 1234836, at *5 (S.D.N.Y. Mar. 26, 2013) ("[The defendant] purposefully availed himself of the New York market when he came for three … meetings, obviously with the hope that the plans would succeed and the venture would go forward.… Given that a cross-national venture was being negotiated in New York, [the defendant] should have known that he could be haled into court there if the proposed venture had ended less than amicably. Thus, [the defendant] had minimum contacts in New York.").

Her other points of contact mentioned earlier, including doing other business in New York and controlling the New York bank account, again simply bolster this conclusion. *See Pinnacle Ge Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 384 (S.D.N.Y. 2013) (weighing the use of a bank account as a contact).

On reasonableness, Paik has not shown that exercising jurisdiction would be unreasonable. Litigating in New York is a minimal burden for a resident of northern New Jersey. And though the second and fifth factors are not especially clear in either direction, the third and fourth factors

strongly favor IEG. The suits between IEG and Bartolozzi will continue in this forum regardless, so both IEG and the judiciary have an interest in keeping the Paik suit here. Without "a compelling case that the presence of some other considerations would render jurisdiction unreasonable," exercising jurisdiction over Paik is constitutional. *Burger King*, 471 U.S. at 477.

Finally, this case has a few extra wrinkles worth addressing. First, negotiating a contract in the forum typically establishes personal jurisdiction over parties to the contract for breach of contract claims. *See Snowbridge Advisors LLC v. ESO Cap. Partners UK LLP*, 589 F. Supp. 3d 401, 413 (S.D.N.Y. 2022). Paik is not a party and the claims are not for breach, but those facts would simply make the case for personal jurisdiction more straightforward. Nevertheless, for the reasons above, there is still enough here to satisfy both the state and federal standards.

Second, Paik emphasizes that her employment agreement has a New Jersey forum-selection clause. But that clause applies only to actions brought "to enforce" the agreement. Dkt. 47-3 at 13. The fiduciary-duty claim "is independent" because "[e]ven without the Employment Agreement, [IEG] would have a fiduciary duty claim under … [Paik's] role within the company" as general manager. *Onyx Renewable Partners L.P. v. Kao*, 2023 WL 405019, at *6 (S.D.N.Y. Jan. 25, 2023); *see also Absolute Activist Master Value Fund, Ltd. v. Ficeto*, 2013 WL 1286170, at *18 (S.D.N.Y. Mar. 28, 2013) (explaining that breach of fiduciary duty is a tort rather than contract claim and therefore declining to apply a forum-selection clause). And the aiding-and-abetting and tortious-interference claims are plainly not brought to enforce the employment agreement, which addresses Paik's pay, benefits, and the like. *See* Dkt. 47-1 at 121–33.

Third, Paik says visits to New York made in her official capacity as general manager can't be attributed to her. But Paik's acting as an employee doesn't immunize her under New York or federal law. *See Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 46–47 (N.Y. 1988); *Calder*, 465 U.S. at 790 ("[T]heir status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually.").

## CONCLUSION

For these reasons, Defendant Paik's motion to dismiss is DENIED. The Clerk of Court is directed to close Dkt. 88.

SO ORDERED.

Dated: January 25, 2024
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge

5